**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
**GARY S. GRAIFMAN**
210 Summit Avenue
Montvale, New Jersey 07645
Telephone (201) 391-7000

**GREEN & PAGANO, LLP**
**MICHAEL S. GREEN**
522 Route 18, P.O. Box 428
East Brunswick, New Jersey 08816
Telephone (732) 390-0480

**DIAMOND LAW OFFICE, LLC**
**PAUL DIAMOND** 1605 John Street, Suite 102
Fort Lee, New Jersey 07024
Telephone (201) 242-1110

**Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VIOLETA CRUZ, on behalf of herself and all others similarly situated, | : <br> : <br> : |
| Plaintiff, | : <br> : Case No. <br> : |
| v. | : <br> : CIVIL ACTION <br> : |
| HARTZ MOUNTAIN CORPORATION and SUMITOMO CORPORATION OF AMERICA | : **CLASS ACTION COMPLAINT** <br> : **AND DEMAND FOR** <br> : **JURY TRIAL** |
| Defendants. | : <br> : <br> : **CLASS ACTION** <br> : |

Plaintiff, Violeta Cruz, individually and on behalf of all others similarly situated, by and

1

through her attorneys, allege upon personal knowledge as to herself and upon information and belief as to the other allegations of this Complaint, as follows:

## NATURE OF THE CASE

1. This is a class action pursuant to F.R.C.P 23, on behalf of all persons and entities who purchased Hartz UltraGuard pursuant to offers made by or under the direction of Defendants, Hartz Mountain Corporation and Sumitomo Corporation of America (collectively "Defendants").

2. Plaintiff bring this class action for breach of express warranty, breach of implied warranty of merchantability, unjust enrichment, and violation of New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. to redress the harms resulting from the manufacture, production and sale by the Defendants' of the defective flea and tick medication, Hartz UltraGuard.

3. As described in more detail below, defendant Hartz Mountain Corporation (hereinafter "Hartz") has a principal place of business in Secaucus, New Jersey. Defendant Sumitomo Corporation of America, (hereinafter "Sumitomo") has a principal place of business in New York, New York. Hartz Mountain Corporation is a wholly owned subsidiary of Sumitomo Corporation of America.

4. Hartz Mountain Corporation manufactures, produces and sells Hartz UltraGuard as a flea and tick control medication for dogs and cats. Hartz UltraGuard contains the insecticide Phenothrin and s-methoprene as active ingredients. Hartz Mountain Corporation employs over 1600 people and has over a 50% share of the retail sales channel and accounts for 20% of all flea and tick products sold. (Attached hereto as Exhibit A is a letter dated March 16, 2009 from Hartz Mountain Corporation to KNBC-TV.) Hartz also has a Safety and Environmental Pledge on their website www.hartz.com, in which they state, "We hold our products to the strictest efficacy and

safety standards by EPA and FDA. If there is no animal standard in place, we hold our products to human standards". (Attached hereto as Exhibit B is Hartz Safety and Environmental Pledge). Hartz had, or should have had, knowledge of the adverse reactions that pets were experiencing after the application of Hartz UltraGuard.

5.      The defective medication caused Plaintiff and Class members monetary damages and ascertainable losses, in that Plaintiffs and Class member purchased and applied the Hartz UltraGuard product to their pets according to the product instructions and representations which caused injury to said pets in that they became ill with central nervous system disorders/symptoms, rashes, itching, hair loss and loss of appetite requiring veterinarians visits, medications, hospitalizations and, in some cases, burials of those pets that died from complications caused by the use of the Hartz UltraGuard products.

6.      The product is defective because it causes skin irritation and neurological problems with greater severity and frequency than that cited in its inadequate warning. Defendants misrepresented the risk of use of the product to the public which was an unconscionable commercial practice.

7.      Defendant Hartz' warning on the insert that comes with the Hartz UltraGuard product provides an inadequate warning to consumers. Attached hereto as Exhibit C is the insert. It states:

"Sensitivity, such as slight transitory redness of the skin at the site of application, may occur after using ANY pesticide product for pets. If signs of sensitivity occur, bathe your pet with mild soap, rinse with large amounts of water, and consult a veterinarian immediately."

## PARTIES

8.      Plaintiff, Violeta Cruz is a resident of Georgia residing at 7500 Springs Lane, Apt.

A, Norcross, Georgia.

9. Defendant, Hartz Mountain Corporation, has its principal place of business 400 Plaza Drive, Secaucus, New Jersey.

10. Defendant, Sumitomo Corporation of America has its principal place of business at 600 Third Avenue, New York, New York.

11. Defendant, Hartz Mountain Corporation is a wholly owned subsidiary of Sumitomo Corporation of America.

## JURISTICTION AND VENUE

12. This Court has original jurisdiction over this class action under 28 U.S.C. §1332(d)(2), (d)(5)(B), (d)(6) because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendants are citizens of different states.

## CLASS ACTION ALLEGATIONS

13. This action is brought and may properly proceed as a class action, pursuant to the provisions of F.R.C.P. 23. Plaintiff brings this action on behalf of herself and all others similarly situated. Proposed F.R.C.P 23(b)(3) Class is defined as follows:

> All purchasers of Hartz UltraGuard products (the products") for dogs and cats between January 15, 2004 and the present who incurred economic damages as a result of their dogs' and cats' adverse reaction to the products including veterinary fees, treatment costs and burial/funeral fees.

14. Plaintiff further proposes the following F.R.C.P. 23(b)(2) Class for which injunctive and declaratory relief only is sought. Plaintiff seeks to enjoin Defendants from selling the Hartz UltraGuard product with their current inadequate warning that is on the product, (See Exhibit C-attached warning) and to ask for a Declaration from the Court that the current warning is inadequate and must be changed. This (b)(2) class is defined as follows:

> All purchasers in the future of Hartz UltraGuard products ("products") for dogs and cats with the current inadequate warning.

15. This action is properly maintainable as a class action. The class members for whose Benefit this action is brought are so numerous and geographically dispersed that joinder of all members is impracticable, and the disposition of their claims in a class action will provide substantial benefits to both the parties and the Court. The numerosity requirement of F.R.C.P. 23(a)(1) is therefore satisfied.

16. A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted, and no unusual difficulties are likely to be encountered in the management of this class action. Since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually seek redress for the wrongful conduct alleged.

17. Rule 23(a)(2) and Rule 23(b)(3) are both satisfied because there are questions of law and fact which are common to the Class and which predominate over questions affecting any individual class member. The common questions include, *inter alia*, the following:

    a. Whether defendants breached any express or implied warranties when they

manufactured and sold the defective medication;

   c. Whether defendants' business practices constitute violations of the New Jersey Consumer Fraud Act and, if so, the measure of damages and triple damages;

   d. Whether defendants have been unjustly enriched by its practices as detailed herein;

   e. Whether defendants' actions were sufficiently wrongful so as to entitle the plaintiff and all others similarly situated to punitive damages; and,

   f. Whether the Class has been damaged and/or suffered irreparable harm and, if so, the extent of such damages and/or the nature of the equitable and injunctive relief which each member of the Class is entitled.

  18. Plaintiff's claims and the claims of members of the Class all derive from a common nucleus of operative facts.

  19. In satisfaction of F.R.C.P. 23(a)(3) and 23(a)(4), Plaintiff is asserting claims that are typical of the claims of the entire Class, and Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests that are antagonistic to those of the other members of the Class. Plaintiff anticipates no difficulty in the management of this litigation as a class action. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation.

  20. Pursuant to F.R.C.P. 23(b)(1) and (b)(2), Defendants have acted or refused to act on grounds generally applicable to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class as a whole.

## FACTUAL ALLEGATIONS

21.     Hartz Mountain Corporation has over a 50% share of the retail sales channel and accounts for 20% of all flea and tick products sold.

22.     Hartz UltraGuard contains the insecticide Phenothrin and s-methoprene as active ingredients.  These insecticides are regulated and registered through the EPA and FDA.  Any adverse reactions that are reported to the Defendant Hartz must be then reported to the EPA.

23.     In November, 2005, the EPA issued a Product Cancellation Order on Hartz Flea and Tick drops for cats and kittens that contained 85.7% Phenothrin and 2.9% s-Methoprene.  This was issued because this product was associated with a range of adverse reaction, including hair loss, salivation, tremors, and numerous deaths in cats and kittens. (Attached hereto as Exhibit D is the EPA Product Cancellation Order).

24.     The EPA issued an advisory on April 21, 2009 regarding Flea and Tick Control Products for Pets.  This advisory is attached hereto as Exhibit E.  The EPA cited a recent sharp increase in the number of adverse reactions that are being reported from the use of these products.  Defendants' Hartz UltraGuard is one of the seven products that comprise eighty percent (80%) of the 44,000 reported adverse reactions in 2008.

26.     Petco is advising consumers who are interested in purchasing Hartz UltraGuard through their website, www.petco.com, that the EPA has reported an increase in complaints about these adverse reactions.  Attached hereto as Exhibit F is the www.petco.com advisory.

## PLAINTIFF'S ALLEGATIONS

27. Plaintiff, Violeta Cruz, owns a cocker spaniel dog named Muffy. She purchased the Hartz UltraGuard and on October 5, 2009 Plaintiff applied the Hartz UltraGuard product to her dog for flea and tick control.

28. Muffy is six years old dog and until the application of Hartz UltraGuard, Plaintiff's dog was in very good health and had no medical conditions.

29. Approximately several days after the application of Hartz UltraGuard, Plaintiff's dog began to have spasms. He fell down, defecated and continued to shake. Muffy's fur began to fall out and he cannot straighten his neck. His head now hangs to one side.

## FIRST COUNT
### (Breach of Express Warranty)

30. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

31. Defendants expressly warranted that the defective pet medication was, in fact, a safe flea and tick medication for use on dogs and cats.

32. In addition, Defendants made numerous express warranties about the quality of its medication. For example, on the Defendant's website, www.hartz.com, they state the following in their Safety and Environmental Pledge, "We hold our products to the strictest efficacy and safety standards by EPA and FDA. If there is no animal standard in place, we hold our products to human standards". The Defendants' warnings included with the Hartz UltraGuard product are inadequate as it indicates that there may be only "slight transitory" redness of the skin at the site of the application.

33. Members of the Class were induced by Defendants' labeling, advertising and

marketing of the defective medication as being "very effective in treating fleas and ticks" to rely upon said express warranty, and did thereby purchase the defective medication and applied it to their pets.

34. As a result of Defendants' misrepresented warranties, Plaintiff and the Class purchased the Hartz UltraGuard product and gave it to their pets.

35. By virtue thereof, as a direct and proximate cause of Hartz Mountain Company breach of Express Warranty, Plaintiff and Class Members have suffered damages in an amount to be determined upon trial, which they are entitled to and hereby seek to recover.

## SECOND COUNT
### (Breach of Implied Warranty of Merchantability)

36. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

37. Defendants are merchants pursuant to sections 2-104 and 2-314 of the Uniform Commercial Code with respect to the manufacturing and selling of flea and tick medication.

38. Through Defendants' marketing, labeling and sales, Defendants impliedly warranted that the defective pet medication, which was sold to Plaintiff and Class Members and administered to their pets, was fit for the ordinary purpose for which it was intended, namely, to safely control flea and ticks on pets without any resulting negative health effects, pursuant to section 2-3114 of the Uniform Commercial Code.

39. Through the Defendants' marketing, labeling, and sales, Defendants knew that Plaintiff and Class Members would purchase the defective pet medication at issue for the ordinary purpose of treating their pets for fleas and ticks.

40. Defendants manufactured, labeled, advertised, sold and distributed the defective pet medication at issue for the ordinary purpose for which is was purchased by Plaintiff.

41. Plaintiff and Class Members purchased and used the defective pet medication for ordinary purposes for which such goods are sold, namely to safely control flea and ticks on their pets.

42. Plaintiff and Class Members were induced by Defendants' representations and claims in purchasing the defective pet medication.

43. The defective pet medication purchased by Plaintiff and Class Members were unfit for their ordinary purpose when sold. In fact, such pet medications were defective and caused severe illness and/or death of the pets that used them. Therefore, Defendants breached the implied warranty of merchantability in the sale of the defective pet medication at issue.

44. Plaintiff and members of the Class sustained damages as a proximate result of said breach of warranty.

## THIRD COUNT
**(Unjust Enrichment)**

45. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

46. As set forth in greater detail above, Defendants profited and benefited from the sale of their defective pet medication, even as the pet medication caused Plaintiff to incur damages.

47. As a result of the conduct described in this Count, the Plaintiffs and Class Members paid monies to Defendants for which the Plaintiffs and Class Members received no benefit and to which Defendants were not entitled. Defendants have voluntarily accepted and retained these

profits and benefits, derived from consumers, including Plaintiff, with full knowledge and awareness that, as a result of Defendants' unconscionable wrongdoing, consumers, including Plaintiff, were not receiving products of the quality, nature, fitness or value that had been represented by Defendants or that reasonable consumers expected.

48. In consequence of the acts set forth in this Count, Defendants have been unjustly enriched at the expense of the Plaintiff and Class Members.

49. The Plaintiff and Class Members are entitled to the amount of Defendants' unjust enrichment as restitution which is hereby sought.

## FOURTH COUNT
**(Violations of the New Jersey Consumer Fraud Act - N.J.S.A. 56:8-1 et seq.)**

50. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

51. Defendants are the researchers, developers, designers, testers, manufacturers, inspectors, labelers, distributors, marketers and sellers and released the defective pet medication into the stream of commerce while promoting its sales and use through advertising.

52. Defendants knew or should have known that the use of the defective pet medication causes and would cause serious and life threatening injuries to animals with greater severity and frequency than cited in its inadequate warning, but failed to warn the public, including Plaintiff and the Class, of same. This misrepresentation was an unconscionable commercial practice.

53. Plaintiff and all members of the Class suffered an ascertainable loss, the recovery of which is hereby sought, when they were charged by the defendant for the defective pet medication and for any subsequent expenses incurred as a result of the defective pet medication.

54.     The promotion and release of the defective pet medication into the stream of commerce generally, and in particular, without adequate warnings, constitutes an unconscionable commercial practice, deception, false pretense, misrepresentation, and/or concealment, suppression or omission of material facts with the intent that others would rely upon such concealment, suppression or omission in connection with the sale or advertisement of such merchandise by Defendants, in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*

55.     By virtue thereof, class-wide injunctive relief is sought to provide adequate warning to purchasers of the products. Plaintiff and class members further seek a declaratory judgment that the subject products are capable of causing serious adverse reactions, including neurological symptoms such as seizures, in dogs and cats and that the warnings provided for the products by Defendants has been and is inadequate.

**WHEREFORE,** Plaintiff, on behalf of himself and the members of the Class, demands judgment as follows:

(a) A determination that this action is a proper class action maintainable under Federal Rules of Civil Procedure, Rule 23, and certifying an appropriate Class and/or Subclass and certifying Plaintiff as Class and Subclass representatives;

(b) Equitable and injunctive relief enjoining Hartz Mountain Corporation and its parent corporation, Sumitomo Corporation of America from pursuing the policies, acts and practices described in this Complaint; and enjoining said parties to undertake the injunctive remedies requested hereinabove including providing adequate warnings for the products;

(c) A declaratory judgment that the subject products are capable of causing serious adverse reactions, including neurological symptoms such as seizures, in dogs and cats and that the warnings

provided for the products to Plaintiff, and the public generally, has been and is inadequate;

(d) An order requiring disgorgement and/or imposing a constructive trust upon Hartz Mountain Corporation and its parent corporation, Sumitomo Corporation of America, monies received from the sale of Hartz UltraGuard products, and requiring defendants to pay Plaintiff and all members of the Class for any act or practice declared by this Court to be unlawful;

(e) Damages in an amount to be determined at trial;

(f) Statutory damages for violations of the applicable statutes and the Consumer Fraud Act. Pre-judgment and post-judgment interest at the maximum rate allowable at law;

(g) Punitive damages in an amount to be determined at trial;

(h) The costs and disbursements incurred by Plaintiff in connection with this action, including reasonable attorneys' fees and expert fees; and

(i)     Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated:                                      **KANTROWITZ, GOLDHAMER & GRAIFMAN**

                                            By: _____
                                            **GARY S. GRAIFMAN, ESQ.**
                                            210 Summit Avenue
                                            Montvale, New Jersey 07645
                                            Tel: (201) 391-7000
                                            Fax:(201) 307-1086

                                            **GREEN & PAGANO, LLP**

                                            By: _____
                                            **MICHAEL S. GREEN, ESQ.**
                                            522 Route 18, P.O. Box 428
                                            East Brunswick, New Jersey 08816
                                            Telephone (732) 390-0480

                                            **DIAMOND LAW OFFICE, LLC**

                                            By: _____
                                            **PAUL DIAMOND, ESQ.**
                                            1605 John Street, Suite 102
                                            Fort Lee, New Jersey 07024
                                            Tel: (201) 242-1110
                                            Fax: (973) 302-8189

                                            *Plaintiff's Counsel*